## GRAMM v. BOENER.

NEGLIGENCE.—*Malpractice.*—Physicians and surgeons are bound to possess and exercise at least the average degree of skill possessed and exercised by the members of their professions in such localities generally as those in which they practice; and, in an action against a physician or surgeon for unskilful practice, it is error to instruct the jury, that, if a physician or surgeon has exercised such a degree of skill as is ordinarily exercised in his profession in the particular locality in which he practises, it will be sufficient.

SAME.—In such an action, an allegation, that an injury complained of was occasioned by the want of professional skill and care of the defendant, is not sustained, if it be proved that the negligence of the plaintiff directly contributed to produce the injury ; but proof of the commission by the defendant of an injury complained of is *prima facie* proof of negligence or unskilfulness, and the defendant must then show that the injury was the result of inevitable accident, or was occasioned by negligence of the plaintiff.

SAME.—*Operation by Surgeon at Request of Plaintiff.—Instruction to Jury.*— Where, in such an action, there was evidence tending to prove that the plaintiff, a man of mature age, whose arm had been broken and set, some weeks afterward repeatedly requested the defendant, a physician and surgeon, to re-break and reset it, and that the defendant advised against it, and that the arm was re-broken by the defendant at the sole instance of the plaintiff, and against the advice of the defendant, it was error to instruct the jury, without qualification, that the defendant ought not to have performed the operation, if it was unreasonable and would necessarily result in injury to the plaintiff.

From the Vanderburgh Circuit Court.

*C. Denby, D. B. Kumler* and *V. Birch,* for appellant.

*J. M. Shackelford* and *R. D. Richardson,* for appellee.

WORDEN, J.—This was an action by the appellee, against the appellant, to recover damages for alleged negligence and unskilfulness on the part of the defendant, in the performance of his undertaking, as a surgeon, to set a broken arm and a broken leg of the plaintiff, whereby the plaintiff lost the use of his arm, and his leg became crooked, deformed and permanently lame.

Trial by jury; verdict and judgment for the plaintiff for three thousand dollars.

The only question presented is, whether a new trial should have been granted.

The defendant moved for a new trial, and assigned the following causes:

1, 4 and 5. The court erred in giving certain specified instructions.

2 and 3. The court erred in refusing certain instructions asked.

6. The damages are excessive.

7. The verdict is contrary to law.

8. The verdict is not sustained by sufficient evidence.

The instructions given, which are complained of, are as follows:

"1. The allegations, that the injuries complained of were occasioned by the want of professional skill and care of the defendant, are not sustained, if it is proved that the negligence of the plaintiff contributed immediately and directly to produce such injuries. But proof of the commission by defendant of the injuries or any of such injuries, of which the plaintiff complains, very generally carries with it *prima facie* proof of negligence and unskilfulness, and it is for the defendant to show that the injuries were the result of inevitable accident, or that they were occasioned by the negligence of the plaintiff himself.

"4. And then generally, if a patient should send for a physician, under the apprehension that his limb has been improperly set, and under the belief that it will be useless to him, requests the physician to re-break that limb, it is a question addressing itself to the sound judgment, discretion and skill of the physician, as to whether it should be done or not; and I hold that he ought not to do it, if the re-breaking would be likely to endanger the future welfare of the bone, if the operation was unreasonable, and one which must necessarily result in

injury to his patient, who is presumed to be ignorant of that branch or profession.

" 5. I can hardly conceive of a case where a physician could, (but gentlemen of the jury, I leave that question to you as a question of fact,) whether it is possible that a case could occur, where a physician who is called on for his skill, called on for his knowledge, on account of his professional qualifications to do certain things, would be justified or warranted by the mere request of the patient, in doing an act that would imperil the life of his patient, that must necessarily leave the limb in a worse condition than it was before the re-breaking. I am of the opinion, that a physician, if he would do it, would be responsible for the consequences."

The instructions asked and refused were as follows:

" 2. The law does not undertake to balance or set off negligence against negligence. In actions of this kind, the case must show unmixed negligence, or an injury produced by unskilfulness alone; and if the jury find from the evidence, that the plaintiff was guilty of negligence, which in any material degree contributed to produce the result to his arm, of which he complains, they must, on account of any injury to his arm, find no damage against the defendant, but should, as to that claim, find for the defendant.

" 3. The implied contract of a physician or surgeon is not to cure, to restore a limb to its natural perfectness, but to treat the case with diligence and skill. The fracture may be so complicated that no skill vouchsafed to man can restore original straightness and length; or the patient may, by wilful disregard of the surgeon's directions, impair the effect of the best conceived measures. The question, therefore, in this class of cases, is whether he has employed such reasonable skill and diligence as are ordinarily exercised in his profession in the locality where he practises."

We will first consider the charges refused.

The substance of the charge which we have numbered "2," being mentioned in the second cause assigned for a new trial, it seems to us was given in the first instruction. No error was therefore committed in the refusal of the court to give it.

The latter part of the other charge refused contains a proposition which we think is not an entirely correct statement of the law. The proposition contained in the charge is as follows: "The question, therefore, in this class of cases, is, whether he" (the surgeon or physician) "has employed such reasonable skill and diligence as are ordinarily exercised in his profession in the locality where he practises."

In *Smothers* v. *Hanks*, 34 Iowa, 286, it was held, that a charge to the effect that a surgeon was bound to exercise "such reasonable skill and diligence as are ordinarily exercised in the profession by *thoroughly educated* surgeons, having regard to the improvements and advanced state of the profession at the time," was wrong, as erecting too high a standard of required skill. The court held, that "the true measure is that ordinarily exercised in the profession by the members thereof as a body. That is, the average of the reasonable skill and diligence ordinarily exercised by the profession as a whole. Not that exercised by the *thoroughly educated;* nor yet that exercised by the *moderately educated,* nor merely of the *well educated,* but the *average* of the thorough, the well, and the moderate—all, in education, skill, diligence, etc." See, also, *Almond* v. *Nugent*, 34 Iowa, 300.

In Shear. & Redf. Neg., sec. 436, it is said, that "The standard of skill may vary according to circumstances, and may be different even in the same state or country. In country towns, and in unsettled portions of the country remote from cities, physicians, though well informed in theory, are but seldom called upon to perform difficult operations in surgery, and do not enjoy the greater opportunities of daily observation and practice which large

cities afford. It would be unreasonable to exact from one in such circumstances that high degree of skill which an extensive and constant practice in hospitals or large cities would imply a physician to be possessed of."

It seems to us, that physicians or surgeons, practising in small towns, or rural or sparsely populated districts, are bound to possess and exercise at least the average degree of skill possessed and exercised by the profession in such localities generally. It will not do, as we think, to say, that if a surgeon or physician has exercised such a degree of skill as is ordinarily exercised in the particular locality in which he practises, it will be sufficient.

There might be but few practising in the given locality, all of whom might be quacks, ignorant pretenders to knowledge not possessed by them, and it would not do to say, that, because one possessed and exercised as much skill as the others, he could not be chargeable with the want of reasonable skill.

We think the court did not err in refusing the charge.

This brings us to the charges given by the court. We do not discover any substantial objection to the first charge given. It seems to be sustained by the case of *Scudder* v. *Crossan*, 43 Ind. 343.

It appears from the evidence, that, some weeks after the plaintiff's arm had been set by the defendant, the bones being slightly out of place, either from having become displaced or from not having been originally accurately adjusted, the defendant re-broke the arm in order to adjust the bones more accurately. The fourth and fifth charges given, above set out, have reference to this re-breaking of the arm. The charges, as we think, fairly mean, and so the jury must have understood them, that the defendant was liable in damages to the plaintiff for the re-breaking of the arm, whether the operation were performed with due skill and care, or otherwise, if the re-breaking would be likely to endanger the welfare of the bone, if the operation was unreasonable and would leave the limb in a

worse condition than before the re-breaking, and must necessarily result in injury to the patient, although it was done at the request of the plaintiff.

The charges, in view of some phases of the evidence, we think were wrong, and should not have been given.

It seems to us to be the duty of a surgeon, when called upon to perform some surgical operation, to advise against it, if, in his opinion, it is unnecessary, unreasonable, or will result injuriously to the patient. The patient is entitled to the benefit of his judgment, whether asked for or not. If the surgeon, when called upon, should proceed to the performance of the operation, without expressing any opinion as to its necessity or propriety, the patient would have a right to presume, that, in the opinion of the surgeon, the operation was proper.

But if a surgeon, when thus called upon, advises the patient, who is of mature years and of sound mind, that the operation is unnecessary and improper, in short advises against the performance, and the patient still insists upon the performance of the operation, in compliance with which the surgeon performs it, we do not see upon what principle the surgeon can be held responsible to the patient for damages, on the ground that the operation was improper and injurious. In such case, the patient relies upon his own judgment, and not upon that of the surgeon, as to the propriety of the operation; and he can not complain of an operation performed at his own instance and upon his own judgment, and not upon that of the surgeon. The maxim, *volenti non fit injuria*, we think, well applies to such a case. The principle is quite analogous to that which prevents a recovery for injuries consequent upon unskilful or negligent treatment by a physician, if the plaintiff's own negligence directly contributed to them. *Hibbard* v. *Thompson*, 109 Mass. 286; *Scudder* v. *Crossan*, *supra.*

There is evidence in the record tending to show that the plaintiff, who was a married man and may be sup-

posed to have been of mature years, repeatedly desired to have his arm re-broken, when the defendant visited him. He said positively that he wanted it re-broken. The defendant advised against it. He told them it would be of no use; that it had better be left alone, and that they ought not to think of it. In short, there is enough in the evidence, if the jury believed it, to justify them in finding that the arm was re-broken at the sole instance of the plaintiff, and against the advice of the defendant.

The charges given leave out of view this phase of the case. They are based upon the theory that the defendant would be liable for the re-breaking of the arm, if unnecessary and injurious to the plaintiff, though it may have been done against the advice of the defendant, and solely at the repeated request of the plaintiff acting upon his own judgment, and not that of the defendant. The jury, it is true, may not have found this state of facts to have existed, but there was evidence tending to support it; and the defendant had a right to have this evidence considered. From the charges given, the jury may well have inferred that this evidence was of no importance whatever.

The conclusion at which we have arrived, in reference to the charges given, renders it unnecessary to consider the other causes assigned for a new trial.

The judgment below is reversed, with costs, and the cause remanded, for a new trial.